JUBILEE LEGAL
Daniel "Sparky" Abraham     State Bar No. 299193
300 E. Esplanade Dr., 9th Floor
Oxnard, CA 93036
Telephone: (805) 946-0386
Facsimile: (805) 620-7834
sparky@jubilee.legal

BAY AREA LEGAL AID
Juliana Fredman            State Bar No. 282924
1735 Telegraph Ave.
Oakland, CA 94612
Telephone: (510) 318-7216
Facsimile: (510) 663-4740
rcoe@baylegal.org

Attorneys for Plaintiff IRMA ROSS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRMA ROSS, <br><br> Plaintiff, <br><br> vs. <br><br> WELLS FARGO BANK, NATIONAL ASSOCIATION, <br><br> Defendant. | **Case No.** <br><br> **COMPLAINT FOR DECLARATORY RELIEF, PUBLIC INJUNCTIVE RELIEF, AND DAMAGES FOR:** <br><br> I. **VIOLATIONS OF THE TRUTH IN LENDING ACT (15 U.S.C. § 1601 *ET SEQ*.);** <br> II. **VIOLATIONS OF THE ELDER ABUSE AND DEPENDENT ADULT CIVIL PROTECTION ACT (WELFARE & INSTITUTIONS CODE §15600 *ET SEQ*.);** <br> III. **VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (CIVIL CODE § 1788 *ET SEQ*.);** <br> IV. **CONVERSION;** <br> V. **VIOLATIONS OF PENAL CODE §496; and** <br> VI. **VIOLATIONS OF THE UNFAIR COMPETITION LAW (BUS. & PROF. CODE § 17200).** <br><br> **DEMAND FOR JURY TRIAL** |

1. Plaintiff IRMA ROSS ("Mrs. Ross") by her attorneys, alleges on personal information and upon information and belief based upon, *inter alia*, the investigation made by and through her attorneys, as follows:

**INTRODUCTION**

2. Mrs. Ross brings this action for declaratory relief, public injunctive relief, and damages against WELLS FARGO BANK, NATIONAL ASSOCIATION ("Defendant" or "Wells Fargo") to challenge its practice of unlawfully seizing funds out of its customers' bank accounts.

3. Mrs. Ross is an 81-year-old widow. She has banked with Wells Fargo for more than 30 years. Her sole source of income is the $1,965.20 per month she receives from Social Security, which is directly deposited into her account by the government. Mrs. Ross has both a Wells Fargo deposit account and a Wells Fargo credit card account.

4. On December 21, 2023, Mrs. Ross had approximately $1,311.71 in her checking account. On that day, without prior notice or authorization, Wells Fargo knowingly and willfully withdrew $1,026.74 from Mrs. Ross's checking account and applied it as a payment—a payment to Wells Fargo itself—on Mrs. Ross's credit card.

5. As a result of this unauthorized withdrawal, Mrs. Ross's checking account balance was reduced to less than $285. Mrs. Ross found herself unable to pay her bills, unable to afford her medication, and unable to purchase household necessities for daily living such as food and gas.

6. Despite repeated requests from Mrs. Ross and her attorneys, Wells Fargo withheld Mrs. Ross's funds for nearly eight months, finally returning $1,527.74 to her on August 1, 2023.

7. Wells Fargo had no right to unilaterally seize Mrs. Ross's funds. In doing so, Wells Fargo committed theft, conversion, and violated numerous provisions of law including the Unfair Competition Law, Business & Professions Code § 17200; the Truth In Lending Act, 15 U.S.C. § 1601 *et seq.*; the Rosenthal Fair Debt Collection Practices Act, Civil Code § 1788 *et*

*Complaint*

*seq.*; the Elder Abuse and Dependent Civil Protection Act, Welfare & Institutions Code § 15600 *et seq.*; and Penal Code § 496.

## JURISDICTION AND VENUE

8. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331, which grants this Court original jurisdiction in all civil actions arising under the laws of the United States, 15 U.S.C. § 1640(e), and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

9. This action arises out of Defendant's violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* in addition to numerous state laws as alleged herein.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the acts and transactions at issue occurred in this District and Defendant transacts business in this District.

11. Divisional assignment is proper in San Francisco pursuant to Civil L.R. 3-2 because the acts and transactions occurred in Napa County, Defendant transacts business in Napa County, and cases arising in Napa County may be assigned to the San Francisco or Oakland divisions.

## PARTIES

12. Plaintiff Mrs. Ross is a natural person. At all relevant times, Mrs. Ross was a resident of Napa County, California.

13. Defendant, Wells Fargo, National Association, is a federally chartered corporation with its principal place of business in the state of South Dakota, conducting business in California, including via corporate offices in San Francisco, California.

## FACTUAL ALLEGATIONS

14. Mrs. Ross is an 81-year-old widow whose sole source of income is the $1,965.20 she receives from Social Security each month. She has Parkinson's disease, diabetes, and high blood pressure, and she relies on medications to treat these conditions. Her income is barely enough to meet her basic needs, including her critical medication.

15. Mrs. Ross banks with Wells Fargo. She has had a Wells Fargo checking account for more than 30 years and a Wells Fargo credit card account for more than eight years.

*Complaint*

16. Mrs. Ross is retired and all the financial transactions she made using her Wells Fargo credit card and account were for her personal, family or household use. For example, Mrs. Ross uses her Wells Fargo credit card and bank account to purchase clothing, home supplies, and car repairs.

**Wells Fargo Unlawfully Offsets Mrs. Ross's Checking Account**

17. On December 21, 2022, without Mrs. Ross's knowledge or permission, Wells Fargo withdrew $1,026.74 from Mrs. Ross's checking account and applied it to her credit card account.

18. Wells Fargo's action on December 21, 2022, is known as an offset—whereby a creditor offsets an indebtedness using funds belonging to the cardholder which are held on deposit with the card issuer. As explained below, this sort of offset is prohibited by the Truth In Lending Act.

19. Before the withdrawal, Mrs. Ross had approximately $1,311.71 available in her checking account. After Wells Fargo withdrew $1,026.74, Mrs. Ross was left with only $284.97.

20. As a result of the withdrawal, Mrs. Ross was unable to pay her bills, which resulted in additional fees and charges. She did not have money to buy her medications or pay for household necessities like food and gas.

**Wells Fargo Refuses to Give Mrs. Ross Her Money Back**

21. Between December 2022 and July 2023, Mrs. Ross repeatedly contacted Wells Fargo, with the help of her daughter Connie Ross and later her attorney Monique Moore, asking for her money to be returned.

22. Mrs. Ross also asked Wells Fargo to explain the grounds on which the withdrawal was authorized.

23. Between December 2022 and July 2023, Wells Fargo neither returned the money nor provided evidence that the transaction was authorized.

24. Wells Fargo claimed summarily that Mrs. Ross had authorized the withdrawal but provided no evidence that such authorization existed.

*Complaint*

25. Mrs. Ross never authorized the withdrawal.

26. In July 2023, only after Mrs. Ross, by and through her attorney, sent a letter to Wells Fargo enumerating the state and federal laws it violated by taking Mrs. Ross's funds, Wells Fargo agreed to return the $1,026.74.

27. On August 1, 2023, Wells Fargo mailed Mrs. Ross a check for the $1,026.74 it had unlawfully seized on December 21, 2022, along with an additional $500 "customer appreciation credit."

28. Mrs. Ross has suffered an injury in fact and lost money and property as a result of Wells Fargo's conduct. Namely, as a result of Wells Fargo's conduct alleged herein, Mrs. Ross lost use of her own funds for nearly eight months, and incurred fees and interest on bills she was not able to pay.

29. Wells Fargo's conduct, and the long process of trying to resolve the situation, caused Mrs. Ross to suffer physical injuries, including by exacerbating her existing medical conditions.

30. Wells Fargo's conduct has caused Mrs. Ross to suffer a negative impact on her ability to enjoy her life, including the physical manifestations of that negative impact, such as stomach aches, loss of appetite, and fatigue.

31. Mrs. Ross maintains her checking account and credit card account with Wells Fargo, and thus is at risk of being impacted by this illegal conduct by Wells Fargo again in the future.

**State and Federal Law Prohibit Offset**

32. The Truth in Lending Act ("TILA") and Regulation Z prohibit credit card issuers from taking action to offset a cardholder's indebtedness arising from a consumer credit transaction.

33. Specifically, TILA states: "A card issuer may not take any action to offset a cardholder's indebtedness arising in connection with a consumer credit transaction under the relevant credit card plan against funds of the cardholder held on deposit with the card

issuer . . . ." 15 U.S.C. § 1666h(a). There are two narrow exceptions to this provision that are not applicable in this case.

34. In addition, as detailed below, there are numerous federal and state law provisions intended to prevent low-income people from being left destitute as a result of debt collection actions. In particular, both the Social Security Act and the California Code of Civil Procedure have provisions that protect Social Security funds from debt collection. 42 U.S.C. § 407; Calif. Code of Civil Procedure §§ 704.080, 704.220.

35. Despite these prohibitions and protections, Wells Fargo unlawfully offset Mrs. Ross's checking account, leaving her with almost nothing to survive on.

36. On information and belief, Wells Fargo has a policy and practice of offsetting cardholder's deposit accounts, including accounts containing funds derived from Social Security and other government benefits protected under state and federal law.

37. On information and belief, Wells Fargo's policy and practice of offsetting cardholder's deposit accounts is based on a contractual provision that violates federal law and California law.

38. Mrs. Ross brings this action primarily to prevent and prohibit Wells Fargo from engaging in its illegal offset practices as to the general public of potential customers who have yet to enter into a relationship with Wells Fargo, as well as Wells Fargo's current customers.

**FIRST CAUSE OF ACTION**
**Truth in Lending Act**
**(15 U.S.C. § 1601 *et seq.*)**

39. The Truth in Lending Act was enacted "to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). As alleged herein, Wells Fargo has engaged in just such a practice.

40. Mrs. Ross brings the first cause of action against Wells Fargo under the Truth In Lending Act, 15 U.S.C. § 1666h, and Regulation Z, 12 C.F.R. § 1026.12.

41. Mrs. Ross realleges and incorporates by reference herein all of the allegations set forth above.

42. Mrs. Ross is a "consumer" as that term is defined in 12 C.F.R. § 1026.2(a)(11). She uses her Wells Fargo credit card primarily for personal, family, or household purposes, including purchasing clothing, household supplies, and car repairs.

43. Mrs. Ross is a "cardholder" as that term is defined in 15 U.S.C. § 1602(n) and 12 C.F.R. § 1026.2(a)(8).

44. Wells Fargo is a "creditor" as that term is defined in 15 U.S.C. § 1602(g).

45. Wells Fargo is a "card issuer" as that term is defined in 15 U.S.C. § 1602(o) and 12 C.F.R. § 1026.2(a)(7).

46. The Truth In Lending Act ("TILA") and Regulation Z prohibit card issuers from offsetting a cardholder's indebtedness using funds of the cardholder held on deposit with the card issuer. 15 U.S.C. § 1666h(a); 12 C.F.R. § 1026.12(d)(1).

47. Wells Fargo willfully and knowingly used funds belonging to Mrs. Ross and held on deposit with Wells Fargo to offset her alleged indebtedness on her Wells Fargo credit card in violation of TILA and Regulation Z.

48. Wells Fargo's action in using Mrs. Ross's funds as alleged was not authorized by a valid credit plan for periodic payments.

49. Wells Fargo did not have a valid consensual security interest in Mrs. Ross's funds, nor did Wells Fargo have any legal basis to attach, levy, or enforce a court order relating to Mrs. Ross's funds.

50. As a result of Wells Fargo's violations of TILA and Regulation Z, Mrs. Ross is entitled to an award of her actual damages pursuant to 15 U.S.C. § 1640(a)(1).

51. As a result of Wells Fargo's violations of TILA and Regulation Z, Mrs. Ross is entitled to an award of statutory damages in an amount of at least $500 pursuant to 15 U.S.C. § 1640(a)(2)(A)(i).

52. As a result of Wells Fargo's violations of TILA and Regulation Z, Mrs. Ross is entitled to an award of attorneys' fees and costs pursuant to 15 U.S.C. § 1640(a)(3).

# SECOND CAUSE OF ACTION
## The California Elder Abuse and Dependent Adult Civil Protection Act
### (Calif. Welfare & Institutions Code § 15600 et seq.)

53. The Elder Abuse and Dependent Adult Civil Protection Act ("EADACPA") was enacted in 1991 to protect elders and dependent adults from both financial and physical abuse. The EADACPA recognized that elderly persons and dependent adults are more subject to abuse, neglect, and abandonment and creates heightened protections for this disadvantaged class. The intent of the statute is to "enable interested persons to engage attorneys to take up the cause of abused elderly persons and dependent adults." Calif. Welfare & Institutions Code § 15600(j).

54. Mrs. Ross brings the second cause of action against Wells Fargo under the EADACPA, California Welfare & Institutions Code § 15600 *et seq.*

55. Mrs. Ross realleges and incorporates by reference herein all of the allegations set forth above.

56. At all relevant times, Mrs. Ross has been an "elder" as that term is defined in California Welfare & Institutions Code § 15610.27 and a "senior citizen" as that term is defined in California Civil Code § 1761(f). California Welfare & Institutions Code § 15610.27 defines an "elder" as "any person residing in this state, 65 years of age or older." California Civil Code § 1761(f) defines a "senior citizen" as "a person who is 65 years of age or older." On December 21, 2022, the date that Wells Fargo withdrew $1,027.74 from her checking account, Mrs. Ross was 80 years old and resided in California.

57. The acts and omissions of Wells Fargo as alleged above constitute abuse of an elder within the purview and protections of the California Welfare & Institutions Code § 15610.07 in that they were the proximate cause of the financial abuse or other treatment with resulting physical harm, and pain or mental suffering to Mrs. Ross.

58. The acts and omissions of Wells Fargo as alleged above constitute financial abuse of an elder within the purview and protections of the California Welfare & Institutions Code § 15610.30 in that they involve "[t]ak[ing] secret[ing], appropriat[ing], obtain[ing], or retain[ing] real or personal property of an elder or dependent adult for a wrongful use or with intent to

*Complaint*

defraud, or both."

59. Wells Fargo knew or should have known that Mrs. Ross is and was an elder and a senior citizen because, on information and belief, Wells Fargo required Mrs. Ross to provide her date of birth when opening her accounts.

60. Wells Fargo knew or should have known that it had no legal authority to offset Mrs. Ross's account, that the funds in Mrs. Ross's account were from a protected source, and that unilaterally seizing funds from Mrs. Ross's account would result in serious hardship and harm to Mrs. Ross.

61. In seizing funds from Mrs. Ross's account, Wells Fargo took, secreted, appropriated, or retained the property of Mrs. Ross to a wrongful use, thereby causing her to suffer financial abuse.

62. In committing the acts and omissions alleged herein, Wells Fargo acted with recklessness, oppression, fraud, or malice in the commission of the abuse. As a direct and legal result of Wells Fargo's violation of the Elder and Dependent Adult Civil Protection Act in its dealings with Mrs. Ross, she has suffered actual, consequential, and incidental damages, including, without limitation, physical harm, mental suffering, and emotional distress.

63. As a result of Wells Fargo's violations of the EADACPA, Mrs. Ross is entitled to actual damages, attorneys' fees, expenses, and costs of suit pursuant to California Welfare & Institutions Code § 15657.5.

64. As a result of Wells Fargo's recklessness, oppression, fraud, and/or malice in violating the EADACPA, Mrs. Ross is entitled to treble damages pursuant to California Civil Code § 3345 and punitive damages pursuant to California Civil Code § 3294.

### THIRD CAUSE OF ACTION
**The California Rosenthal Fair Debt Collection Practices Act
(Calif. Civil Code § 1788 *et seq*.)**

65. The California Rosenthal Fair Debt Collection Practices Act ("RFDCPA") was enacted "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts . . . ." Calif. Civil Code § 1788.1(b).

66. Mrs. Ross brings the third cause of action against Wells Fargo under the RFDCPA, California Civil Code § 1788 *et seq.*

67. Mrs. Ross realleges and incorporates by reference herein all of the allegations set forth above.

68. At all relevant times, Mrs. Ross is and was a "debtor" as that term is defined in California Civil Code § 1788.2(h).

69. Wells Fargo is a "debt collector" as that term is defined in California Civil Code § 1788.2(c).

70. The money Wells Fargo has claimed Mrs. Ross owes or owed on her credit card account at issue is a "consumer debt" as that term is defined in California Civil Code § 1788.2(f).

71. Wells Fargo's practice of seizing funds from customers' bank accounts, including that of Mrs. Ross, is "debt collection" as that term is defined in California Civil Code § 1788.2(b).

72. Through the conduct alleged above, Wells Fargo has violated the RFDCPA. Wells Fargo's violations include but are not limited to the following:

   a) Wells Fargo engaged in conduct the natural consequence of which is to harass and abuse Mrs. Ross in violation of California Civil Code § 1788.17 (incorporating 15 U.S.C. § 1692d) by unlawfully seizing her money and refusing to return it;

   b) Wells Fargo used unfair and unconscionable means to collect a debt from Mrs. Ross in violation of California Civil Code § 1788.17 (incorporating 15 U.S.C. § 1692f), including by unfairly and unconscionably seizing her money, taking action to dispossess her of property with no present right to possession of the property, taking action to dispossess her of property that is exempt by law from such dispossession, and the collection of amounts not authorized by agreement or permitted by law;

   c) Wells Fargo used false, deceptive, and misleading representations or means in connection with collecting a debt from Mrs. Ross in violation of California Civil

*Complaint*

1 | Code § 1788.17 (incorporating 15 U.S.C. § 1692e), including by falsely implying
2 | that no collection action would take place aside from Mrs. Ross's inability to use
3 | her credit card until the balance was less than the limit, and falsely representing
4 | that Wells Fargo was legally authorized to seize money from Mrs. Ross's account
5 | without her knowledge or consent.

73. Wells Fargo's violations of the RFDCPA alleged herein were committed willfully and knowingly.

74. As a result of Wells Fargo's violations of the RFDCPA, Mrs. Ross is entitled to an award of her actual damages in an amount to be proven at trial pursuant to California Civil Code §§ 1788.30 and 1788.17 (incorporating 15 U.S.C. § 1692k(a)(1)).

75. As a result of Wells Fargo's willful and knowing violations of the RFDCPA, Mrs. Ross is entitled to a penalty of not less than one hundred dollars ($100) or more than one thousand dollars ($1,000) pursuant to California Civil Code § 1788.30(b).

76. As a result of Wells Fargo's violations of the RFDCPA, Mrs. Ross is entitled to an award of statutory damages in an amount not to exceed one thousand dollars ($1,000) pursuant to California Civil Code § 1788.17 (incorporating 15 U.S.C. § 1692k(a)(2)(A)).

77. As a result of Wells Fargo's violations of the RFDCPA, Mrs. Ross is entitled to an award of reasonable attorneys' fees and costs pursuant to California Civil Code §§ 1788.30(c) and 1788.17 (incorporating 15 U.S.C. § 1692k(a)(3)).

78. Pursuant to California Civil Code § 1788.32, the remedies provided under the RFDCPA are intended to be cumulative and in addition to any other procedures, rights, or remedies that Mrs. Ross may have under any other provision of law.

## FOURTH CAUSE OF ACTION
### Conversion

79. Mrs. Ross brings the fourth cause of action against Wells Fargo for conversion.

80. Mrs. Ross realleges and incorporates by reference herein all of the allegations set forth above.

81. Through the conduct alleged above, Wells Fargo wrongfully exercised control and took possession of Mrs. Ross's personal property.

82. Mrs. Ross owned and had a right to possess the funds in her depository account held by Wells Fargo.

83. Wells Fargo substantially interfered with Mrs. Ross's property by knowingly and intentionally taking possession of $1,026.74 belonging to Mrs. Ross, thereby preventing Mrs. Ross from having access to these funds.

84. Wells Fargo further substantially interfered with Mrs. Ross's property by refusing to return the $1,026.74 belonging to Mrs. Ross after Mrs. Ross demanded its return.

85. Mrs. Ross did not consent to Wells Fargo exercising control and taking possession of her $1,026.74.

86. Mrs. Ross was harmed by Wells Fargo's conduct alleged herein.

87. Wells Fargo's wrongfully exercising control and taking possession of Mrs. Ross's $1,026.74, and refusing to return it on her demand, was a substantial factor in causing the harm to Mrs. Ross.

88. Mrs. Ross is entitled to recover damages from Wells Fargo in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION
### Civil Theft
### (Calif. Penal Code § 496)

89. California Penal Code § 496 subjects those who commit theft or extortion to a civil cause of action brought by a person injured by the theft or extortion.

90. Mrs. Ross brings the fifth cause of action against Wells Fargo under California Penal Code § 496(c).

91. Mrs. Ross realleges and incorporates by reference herein all of the allegations set forth above.

92. Wells Fargo obtained $1,026.74 belonging to Mrs. Ross in a manner constituting theft by unlawfully exercising possession and taking control over Mrs. Ross's property without a

legal basis and without Mrs. Ross's consent.

93. Wells Fargo obtained $1,026.74 belonging to Mrs. Ross in a manner constituting theft by fraudulently appropriating Mrs. Ross's property which had been entrusted to Wells Fargo.

94. Wells Fargo knew that Mrs. Ross's property had been taken unlawfully and without her consent because Mrs. Ross repeatedly informed Wells Fargo that she did not consent to the withdrawal and requested her money back. Wells Fargo nonetheless withheld Mrs. Ross's property from her.

95. Mrs. Ross was injured by Wells Fargo's actions alleged herein.

96. Pursuant to California Penal Code § 496(c), Mrs. Ross is entitled to an award of three times her actual damages to be proven at trial, costs of suit, and reasonable attorneys' fees.

**SIXTH CAUSE OF ACTION**
**Unfair Competition Law**
**(Calif. Business & Professions Code § 17200)**

97. Mrs. Ross brings the sixth cause of action against Wells Fargo under the California Unfair Competition Law ("UCL"), Business & Professions Code § 17200.

98. Mrs. Ross realleges and incorporates by reference herein all of the allegations set forth above.

99. Both Mrs. Ross's Wells Fargo credit card account and Wells Fargo bank account are "consumer financial products or services" as that term is defined in 12 U.S.C. § 5481(5).

100. Wells Fargo is a "covered person" as defined in 12 U.S.C. § 5481(6) because Wells Fargo engages in offering consumer financial products and services, including the deposit account and credit card account used by Mrs. Ross.

101. Federal law prohibits covered persons from engaging in any unfair, deceptive, or abusive acts or practices with respect to a consumer financial product or service. 12 U.S.C. § 5531(a).

102. Wells Fargo's actions alleged herein constitute unfair acts and practices that have caused Mrs. Ross substantial injuries that were not reasonably avoidable by her. Mrs. Ross's

injuries were not outweighed by countervailing benefits to consumers or to competition. Wells Fargo's actions alleged herein are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits attributable to the conduct.

103. Wells Fargo's actions alleged herein constitute deceptive acts and practices because they include material misrepresentations and omissions likely to mislead. Namely, Wells Fargo represented that its unilateral withdrawal from Mrs. Ross's account was authorized by law when it was not.

104. Wells Fargo's actions alleged herein constitute abusive acts and practices because they took unreasonable advantage of Mrs. Ross's inability to protect her interests while using consumer financial products or services. Namely, Wells Fargo took unreasonable advantage of Mrs. Ross's inability to prevent Wells Fargo from withdrawing funds from her account.

105. Wells Fargo's actions alleged herein constitute fraudulent acts and practices because they involve false and misleading representations and omissions likely to deceive reasonable consumers. Namely, Wells Fargo represents, and represented to Mrs. Ross, that it has the legal authority to unilaterally withdraw funds from deposit accounts and apply those funds to credit card accounts when it does not.

106. Wells Fargo's actions alleged herein are unlawful because they violate numerous additional provisions of law, as set forth herein, including:

    a) The Truth in Lending Act, 15 U.S.C. § 1666h, and Regulation Z, 12 C.F.R. § 1026.12;

    b) The Rosenthal Fair Debt Collections Practices Act, Civil Code § 1788.17 (incorporating 15 U.S.C. §§ 1692d, 1692e, 1692f);

    c) Protections for exempt funds, 42 U.S.C. § 407, Code of Civil Procedure §§ 704.080, 704.220; and

    d) Penal Code § 496.

107. Wells Fargo's actions alleged herein constitute unlawful, unfair, and fraudulent

business practices in violation of the UCL.

108. Mrs. Ross has lost money as a result of Wells Fargo's actions.

109. As a result of Wells Fargo's violations of the UCL, Mrs. Ross is entitled to injunctive relief and other equitable relief in order to remedy past harms and prevent future damages for which there is no adequate remedy at law.

110. Mrs. Ross seeks an injunction to prevent Wells Fargo from violating the UCL as to her accounts in the future.
In addition, Mrs. Ross seeks a public injunction to prevent Wells Fargo from continuing its unlawful practice of withdrawing funds from deposit accounts to apply as payments toward credit card accounts in violation of federal and state law toward the general public of potential future customers and current customers.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendant as follows:

a) For an order enjoining Wells Fargo from continuing its unlawful practice of offsetting consumer credit accounts using funds it holds on deposit as to the general public of its potential customers and current customers;

b) For an order enjoining Wells Fargo from continuing its unlawful practices as to Mrs. Ross's accounts;

c) For actual damages;

d) For statutory damages;

e) For punitive damages;

f) For damages in amount three times greater than authorized by statute pursuant to California Civil Code § 3345;

g) For prejudgment interest at the maximum legal rate;

h) For an award of attorneys' fees, costs, and expenses incurred in the investigation, filing, and prosecution of this action; and

i) For such other and further relief as this Court shall deem just and proper.

*Complaint*

## **TRIAL BY JURY IS DEMANDED**

111. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Respectfully submitted,

Dated: December 20, 2023            By: _____
                                                                Daniel "Sparky" Abraham
                                                                JUBILEE LEGAL

                                                                 Juliana Fredman
                                                                BAY AREA LEGAL AID

                                                                Attorneys for Plaintiff IRMA ROSS

**ELECTRONICALLY STORED INFORMATION REQUEST**

This notice is to demand that you preserve all documents, tangible things and electronically stored information ("ESI") potentially relevant to any issues in the above-entitled matter. This specifically includes, but is not limited to, all information pertaining to the above matter, including specifically all recordings of any telephone communication between your company and Plaintiff.

As used in this request, "you" and "your" or "your client" refers to your organizations, and its predecessors, successors in interest, assignees, parents, subsidiaries, divisions or affiliates, and their respective officers, directors, employees, servants, agents, attorneys, and accountants.

Much of the information subject to disclosure or responsive to discovery is stored on your client's current and former computer systems and other media and devices (such as: personal digital assistants, voice-messaging systems, online repositories and cell phones).

Electronically stored information ("ESI") should be afforded the broadest possible definition and includes (for example and not as an exclusive list) potentially relevant information whether electronically, magnetically or optically stored.

This preservation obligation extends beyond ESI in yours or your client's care, possession or custody and includes ESI in the custody of others that is subject to your client's direction or control. You must notify any current or former agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your client's obligation to do so, and you must try to secure their compliance.

Complaint